495 So.2d 501 (1986)
STATE of Mississippi
v.
Charles W. MARTIN.
No. 56311.
Supreme Court of Mississippi.
October 1, 1986.
Ben L. Saucier, Indianola, for appellant.
John Kirkham Povall, Jacobs, Griffith, Eddins & Povall, Cleveland, for appellee.
Before WALKER, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:
This case presents a narrow but important question of construction of the driver's license suspension provisions of the Mississippi Implied Consent Law. Charles W. Martin, Defendant below and Appellee here, was charged with operating a motor vehicle while his driver's license was suspended. The Circuit Court of Sunflower County, Mississippi, dismissed the charges on the grounds that at the time of the alleged offense Martin's license had not been effectively suspended. We affirm.
On November 18, 1984, Martin was arrested for speeding by a highway patrolman and thereafter given a breathlizer test. Because the test suggested a blood alcohol concentration of more than ten one hundredths percent (.10%) by weight volume in Martin's blood, he was charged with driving under the influence of intoxicating liquors (D.U.I.). Martin's driver's license was seized pursuant to the authority of Miss. Code Ann. § 63-11-23(2) (Supp. 1985), and he was issued a temporary driving permit which contained printed advice to him that if the D.U.I. charge against him was not disposed of within thirty days, "your license will be suspended." This advice appears to track the statutory language *502 of Section 63-11-23(2) which provides, that if the D.U.I. case has not been tried or the driver's license validly extended
the Commission of Public Safety or his authorized agent shall suspend the license of permit to drive .. . for the applicable period of time as provided for in Section (1) of this section.
Subsection (1) of Section 63-11-23 proscribes the authority of the Commissioner of Public Safety in instances where the driver refuses to submit to the chemical test of his breath and, under certain circumstances, authorizes suspension of the driver's license. Subsection (1) contemplates an affirmative act of suspension by the Commissioner and provides that
notice of suspension shall be in writing by registered or certified mail and shall have been given when deposited in the United States Mail, addressed to the licensee's address as it appears on his driver's license or at his last known address.
Against this backdrop, we consider the case at bar. On December 28, 1984  forty days after his original D.U.I. arrest  Martin was arrested once again. This time he had placed against him the charge at issue this day  driving a motor vehicle with a suspended driver's license. At that time the D.U.I. charge against Martin had not yet been resolved. The case had been continued at Martin's request. The record reflects that Martin appeared in Justice Court some three days later, on December 31, 1984, and pled guilty to D.U.I. and paid a fine.
The representatives of the state's prosecutorial interest argue that, as a matter of law, Martin's driver's license was suspended automatically upon the expiration of thirty days following his original arrest and charge on November 18, 1984. Under this thesis, Martin's privilege to operate a motor vehicle was stripped from him when December 18, 1984, came and went without his D.U.I. charges having been disposed of.
The problem with this theory is that the not-too-artfully-worded statute at issue, Section 63-11-23(2) appears on two counts to require affirmative actions by the Commissioner of Public Safety or his authorized agent before a driver's license is effectively suspended.
First, the statute provides that, upon the happening of the requisite events, "the Commissioner ... shall suspend the license... ." The words "shall suspend" suggest that something is to be done. It may be that the statute is mandatory and that the Commissioner has no discretion in the matter, but the wording nevertheless commands an act by the Commissioner. Conversely, this language negates any inference of an automatic suspension without further action by the Commissioner.
Second, the not too artfully worded statute provides that the Commissioner shall suspend the license "for the applicable period of time as provided for in Subsection (1) of this section." We are in doubt whether the words "as provided for in Subsection (1) of this section" modify the provision that the Commissioner shall suspend the license or merely the reference to the applicable period of time of suspension. If the reference to Subsection (1) refers to the method of suspension, then the notice provision of Section 63-11-23(1) should be deemed incorporated into Subsection (2).
Operation of a motor vehicle is no longer a luxury or mere leisure activity for the members of our society. For great many it is an absolute necessity, one's livelihood and one's ability to support oneself and family often depending upon it. While no member of this Court doubts the necessity of effective action to reduce the carnage incident upon drunk driving, we regard any statute for suspension or revocation of driving privileges as penal in nature and effect. Such statutes should be construed strictly though reasonably against infliction of the penalty. McLamb v. State, 456 So.2d 743, 745 (Miss. 1984); State v. Russell, 358 So.2d 409, 412 (Miss. 1978). Having in mind this canon of construction, we hold that Section 63-11-23(2) requires that, before the license of one subject to *503 that subsection is effectively suspended, the Commissioner of Public Safety or his authorized agent must take two steps. First, in the appropriate administrative manner, he must take the affirmative step of suspending that person's license or permit to drive and, second, he must give the driver notice of the suspension by registered or certified mail as provided in Subsection (1). The notice will be deemed given when deposited in the United States Mail, properly addressed.
The record in this case reflects unequivocably that on December 28, 1984, neither the Commissioner of Public Safety nor his authorized agent had taken action to suspend the permit to drive issued to Charles W. Martin. Of course, no notice of any such suspension was given to Martin. Because as a matter of law Martin's license had not effectively been suspended, the Circuit Court correctly entered a judgment acquitting Martin of the charge of driving with a suspended driver's license.
AFFIRMED
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.