# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-KA-01170-SCT

*RONNIE KEYES a/k/a RONNIE DAVID KEYES*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 05/30/95 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN J. MAGGIO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED AND REMANDED - 2/5/98 |
| MOTION FOR REHEARING FILED: | 3/6/98 |
| MANDATE ISSUED: | 4/23/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The Motion for Rehearing is granted. The original opinion is withdrawn and these opinions are substituted therefor.

¶2. The present case came before the Court on criminal interlocutory appeal from a ruling by the Circuit Court of Harrison County, Mississippi, denying the defendant's motion to dismiss. In *Keyes v. State,* No. 95-KA-01170 (decided September 4, 1997), we reversed and rendered, declaring that suspension of a driver's license constitutes punishment for purposes of double jeopardy. We conclude that the Double Jeopardy Clauses of the United States and Mississippi Constitutions do not preclude criminal prosecution for violation of Miss. Code Ann. § 63-11-30 subsequent to administrative license suspension pursuant to § 63-11-23(2).

## I.

¶3. On June 12, 1993, Ronnie David Keyes was arrested in Gulfport, Mississippi, for driving under the influence (DUI). Keyes registered a blood-alcohol content (BAC) of at least thirty-three one-

hundredths percent (.330%), more than three times the legal limit. On July 13, 1993, the Mississippi Department of Public Safety suspended Keyes' driver's license pursuant to its administrative authority under Miss. Code Ann. § 63-11-23(2). Keyes had twice been convicted in the Municipal Court of Gulfport of DUI within the five-year period preceding this arrest. Accordingly, he was indicted on February 11, 1994, on the charge of felony DUI pursuant to Miss. Code Ann. §§ 63-11-30(1)(c) & (2)(c).[1]

¶4. On May 2, 1995, Keyes filed a motion to dismiss based on the double jeopardy and ex post facto provisions of the United States and Mississippi Constitutions.[2] Keyes argues that the Federal and State Double Jeopardy Clauses bar criminal prosecution of the felony DUI charge because administrative license suspension (ALS) under § 63-11-23(2) constitutes a conviction on the merits for the same conduct. On May 30, 1995, the circuit court entered an order denying Keyes' motion to dismiss. The court noted that the Mississippi Supreme Court has not addressed the double jeopardy argument in DUI cases. Following the lead of sister states, however, the court determined that the ALS provisions of § 63-11-23 are "civil proceedings, remedial in nature, and designed primarily to protect the public from drunk drivers rather than to punish said drivers." As such, the court ruled that ALS does not constitute punishment for purposes of double jeopardy and would not bar subsequent prosecution for felony DUI under § 63-11-30.

¶5. Keyes perfected this interlocutory appeal through imperfect process. Nevertheless, because this case involves double jeopardy and an issue of public policy, we exercise our authority to suspend the rules in criminal cases and consider the matter on the merits. Miss. R. App. P. 2(c). *See also Beckwith v. State,* 615 So. 2d 1134 (Miss. 1992) (double jeopardy claims justify immediate determination and may be treated by this Court as a direct appeal from a final judgment).

## II.

¶6. In analyzing Keyes' double jeopardy claim, we are compelled to construe the statute under which his license was allegedly suspended.[3] This inquiry is necessary for resolution of the double jeopardy claim, since we must determine whether the required elements of ALS under § 63-11-23(2) are the same as those for conviction under § 63-11-30.

¶7. Keyes was arrested on June 12, 1993, for operating an automobile with a BAC greater than ten one-hundredths percent (.10%), in violation of § 63-11-30(1)(c). He was charged with felony DUI as a third-time offender pursuant to § 63-11-30(2)(c). One month and one day after the arrest the Mississippi Department of Public Safety suspended Keyes' driver's license pursuant to § 63-11-23(2), which then provided:

> (2) If the chemical testing of a person's breath indicates the blood alcohol concentration was ten one-hundredths percent (.10%) or more by weight volume of alcohol, the arresting officer shall seize the license and give the driver a receipt for his license on forms prescribed by the Commissioner of Public Safety and shall promptly forward the license together with a sworn report to the Commissioner of Public Safety. The receipt given a person as provided herein shall be valid as a permit to operate a motor vehicle for a period of thirty (30) days in order that the defendant be processed through the court having original jurisdiction and a final disposition had; provided, however, that if the defendant makes a written request directed to the trial judge requesting that a trial be held on the matter within such thirty-day period and such defendant is

not afforded a trial within such period, then the Commissioner of Public Safety shall issue such defendant a permit to drive that shall be valid for an additional thirty (30) days. If the defendant makes a written request to the trial judge requesting that a trial be held on the matter prior to the expiration of such permit to drive and such defendant is not afforded a trial within such period, then the Commissioner of Public Safety shall issue such defendant a permit to drive for an additional thirty (30) days. In no event shall a defendant be permitted to drive under the provisions of this subsection for more than ninety (90) days after the initial seizure of such defendant's license. The fact that the defendant has the right to request a trial and the effect of a denial of such request shall be plainly stated on the face of any receipt or permit to drive issued such defendant. **If a receipt or permit to drive issued pursuant to the provisions of this subsection expires without a trial having been requested as provided for in this subsection, then the Commissioner of Public Safety or his authorized agent shall suspend the license or permit to drive** or any nonresident operating privilege for the applicable period of time as provided for in subsection (1) of this section.

Miss. Code Ann. § 63-11-23(2) (1992) (emphasis added). The procedure for actually suspending the license requires two steps. "First, in the appropriate administrative manner, [the Commissioner] must take the affirmative step of suspending that person's license or permit to drive." *State v. Martin,* 495 So. 2d 501, 503 (Miss. 1986). Second, the Commissioner "shall give notice to the licensee that his license or permit to drive . . . shall be suspended thirty (30) days after the date of such notice . . . for a period of one (1) year in the event of any previous conviction of such person under Section 63-11-30." Miss. Code Ann. § 63-11-23(1) (1992); *Martin,* 495 So. 2d at 502 (incorporating notice provision of § 63-11-23(1) into subsection (2)).

¶8. As this Court observed in *Martin,* this is a "not-too-artfully-worded statute." *Id.* It is clear, however, that within the ninety days following initial seizure of the license the triggering mechanism for suspension is the expiration of either of the temporary permits without a *request* by the defendant for a trial. In keeping with a strict construction of § 63-11-23(2), we hold that all a defendant needs to do is request a trial prior to the expiration of each temporary permit he is issued, and by that action the Commissioner is denied the authorization to suspend the license during that period.[(4)]

¶9. Thus, a law enforcement officer may, pursuant to the statute, seize the license of a driver who fails the breath test. When the officer seizes a license he is required to issue a receipt to the driver which shall serve as a permit to operate a motor vehicle for thirty days. If the defendant makes a written request for trial within that first thirty-day period and he is not afforded a trial within that time, the Commissioner shall issue a permit to drive for an additional thirty days. If the defendant renews his request for trial within the second thirty-day period and is not afforded a trial within that time, the Commissioner shall issue the defendant a third thirty-day permit. If this temporary permit expires, and trial has not yet been had, the Commissioner may not issue additional permits to drive.

¶10. We note that seizure of a license does not constitute suspension. Temporary permits issued under § 63-11-23(2) do not bestow upon an individual the legal privilege to operate a motor vehicle, for this privilege is not suspended until the Commissioner takes certain affirmative steps. *See Martin*, 495 So. 2d at 502-03. The permits serve merely as physical evidence of that person's legal status as a licensed driver, in the same manner as the driver's license itself.[(5)] This legal status is not changed by seizure of the license, nor by the expiration of any of the temporary permits. It is changed only by the

affirmative act of the Commissioner in suspending an individual's license. *Id.*; Miss. Code Ann. § 63-1-52(2)(a) (1996). Under § 63-11-23(2), the Commissioner's authority to suspend a defendant's license within the first ninety days is triggered by the defendant's failure to request a trial, or failure to renew a request for trial, within the applicable time period.

## III.

¶11. The central issue before this Court is whether the administrative suspension of Keyes' license constitutes prosecution or punishment for purposes of the State and Federal Double Jeopardy Clauses, thus barring subsequent criminal prosecution for felony DUI under § 63-11-30. Keyes argues that he has already been punished for felony DUI by suspension of his license for one year, and that the State is precluded from further prosecution. Even assuming that ALS is sufficiently punitive to invite a double jeopardy analysis, we conclude that it requires different elements than conviction under § 63-11-30 and thus does not preclude subsequent prosecution under that section.

¶12. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. amend. V, and is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794 (1969); *Cook v. State,* 671 So. 2d 1327, 1331 (Miss. 1996). Mississippi's Double Jeopardy Clause provides that "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution." Miss. Const. art. 3, § 22.

¶13. In *Blockburger v. United States,* 284 U.S. 299 (1932), the United States Supreme Court established the test for federal double jeopardy claims, stating, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304. More recently, the Court reiterated the *Blockburger* test:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies . . . . The same-elements test, sometimes referred to as the *"Blockburger"* test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" [sic] and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon,* 509 U.S. 688, 696 (1993). The "same-elements" methodology of *Blockburger* has been applied by this Court to analyze claims under both the Federal and State Double Jeopardy Clauses. *See, e.g., Shook v. State,* 552 So. 2d 841, 848 (Miss. 1989); *Smith v. State,* 429 So. 2d 252, 253-54 (Miss. 1983).

¶14. As we have construed § 63-11-23(2), the requirements for ALS under that subsection during the first ninety days are the defendant's failure of a breath test and subsequent failure to request a trial or renew a request within the applicable period. The record does not reflect whether Keyes requested a trial at any time. As we have noted, however, this makes no difference in the present appeal. Given the requirements for ALS under § 63-11-23(2), the double jeopardy claim may be resolved by

considering whether these elements are different from those required under the DUI statute. We conclude that failure to request or renew the request for trial is clearly a fact which need not be proved in a prosecution under § 63-11-30. Likewise, conviction under § 63-11-30 requires proof of facts beyond a failed breath test. Under that statute the State must prove beyond a reasonable doubt the fact that the defendant was driving with a blood alcohol concentration which was over the legal limit, not merely that the chemical testing indicated such a level.[(6)] Thus, even if the suspension of Keyes' license could fairly be construed as punishment or as a kind of conviction, it would be based upon proof of different facts to which the double jeopardy bar would not apply.

## IV.

¶15. The State invites us to decide Keyes' double jeopardy claim on the ground that ALS is sufficiently remedial so as not to constitute punishment for purposes of double jeopardy. This was the approach of the trial court, which after looking to sister states for guidance, concluded that ALS is not punishment for double jeopardy purposes "because the former are civil proceedings, remedial in nature, and designed primarily to protect the public from drunk drivers rather than to punish said drivers." There is much to recommend this approach in regard to the Federal Double Jeopardy Clause, especially in light of the United States Supreme Court's recent pronouncement in *Hudson v. United States,* 118 S. Ct. 488 (1997). We have determined that the elements of the two "offenses" of which Keyes complains are entirely separate and would, in any event, provide no double jeopardy protection against multiple punishment. However, even if § 63-11-23(2) were interpreted differently, and ALS under that subsection comprised the same elements for which a defendant is later prosecuted, we are certain that the Federal Double Jeopardy Clause would not bar subsequent criminal prosecution.

¶16. State court challenges to ALS and license revocation provisions on double jeopardy grounds are largely the product of the United States Supreme Court's decision in *United States v. Halper,* 490 U.S. 435 (1989). In *Halper,* a former manager of a medical service provider was convicted on sixty-five counts of criminal fraud for filing inflated Medicare Claims. The federal government subsequently brought an action under the civil False Claims Act, 31 U.S.C. §§ 3729-3731, claiming that it was entitled to judgment for more than $130,000.00 in civil penalties. *Id.* at 438. The government's actual losses totaled $585.00 plus the costs of investigation and prosecution. *Id.* at 439. The Court held that the civil penalty sought in the subsequent proceeding bore no rational relation to the goal of compensating the Government for its loss, but rather qualified as "punishment," thus invoking the protection of the Double Jeopardy Clause. *Id.* at 449.

¶17. The *Halper* Court acknowledged that both criminal and civil proceedings may advance punitive as well as remedial goals, and held that "in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Id.* at 447 n.7. Whether a sanction constituted punishment depended primarily on whether it served the traditional "goals of punishment," namely retribution and deterrence. *Id.* at 448. If a sanction was so "overwhelmingly disproportionate" to the injury that it could not "fairly be said solely to serve [the] remedial purpose" of compensating the government for its loss, it was thought to be explainable only as serving retributive or deterrent purposes. *Id.* at 448-49; *Hudson,* 118 S. Ct. at 494.

¶18. In *Hudson,* the Supreme Court disavowed *Halper,* noting that it deviated from traditional double jeopardy doctrine in two key respects:

> First, the *Halper* Court bypassed the threshold question: whether the successive punishment at issue is a "criminal" punishment. Instead, it focused on whether the sanction, regardless of whether it was civil or criminal, was so grossly disproportionate to the harm caused as to constitute "punishment." In so doing, the Court elevated a single *Kennedy* factor--whether the sanction appeared excessive in relation to its nonpunitive purposes--to dispositive status. But as we emphasized in *Kennedy* itself, no one factor should be considered controlling as they "may often point in differing directions." The second significant departure in *Halper* was the Court's decision to "asses[s] the character of the actual sanctions imposed, rather than, as *Kennedy* demanded, evaluating the "statute on its face" to determine whether it provided for what amounted to a criminal sanction.

*Id.* (citations omitted). After noting that *Halper's* approach has proved "unworkable," and that "some of the ills at which *Halper* was directed are addressed by other constitutional provisions" including the Due Process and Equal Protection Clauses and the Eighth Amendment prohibition against excessive civil fines, the *Hudson* Court announced a return to "traditional double jeopardy principles." *Id.* at 494-95.

¶19. In determining whether the sanction imposed upon Keyes rises to the level of criminal punishment so as to invoke the protection of the Federal Double Jeopardy Clause, we are therefore compelled to apply the traditional two-step approach under *United States v. Ward,* 448 U.S. 242, 248 (1980). First, we must determine whether the legislature, "'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'" *Hudson,* 118 S. Ct. at 493; (quoting *Ward,* 448 U.S. at 248). Second, where the legislature has indicated an intention to establish a civil penalty, we must further inquire "'whether the statutory scheme was so punitive either in purpose or effect'" as to negate that intention. *Hudson,* 118 S. Ct at 493; (quoting *Ward,* 448 U.S. at 248-49). In regard to this latter inquiry, the factors listed in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-69 (1963) are utilized as "guideposts." *Hudson,* 118 S. Ct. at 493. The Court emphasizes that "'only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground.'" *Ward,* 448 U.S. at 249 (quoting *Flemming v. Nestor,* 363 U.S. 603, 617 (1960)). *See also* *One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232, 237 (1972); *Rex Trailer Co., Inc. v. United States,* 350 U.S. 148, 154 (1956).

¶20. As to the first stage of the *Ward* inquiry, there is little doubt that the legislature intended ALS to be a civil penalty. While we have recognized that "one's livelihood and ability to support oneself and one's family" often depends upon being able to operate a motor vehicle, *Martin,* 495 So. 2d at 502, the suspension of a driver's license differs little from the debarment provisions at issue in *Hudson* by which the defendant bankers were prohibited from "further participation in the conduct of 'any insured depository institution.'" *Hudson,* 118 S. Ct. at 492. The *Hudson* Court nevertheless stated: "[t]hat such authority was conferred upon administrative agencies is prima facie evidence that [the legislature] intended to provide for a civil sanction." *Hudson,* 118 S. Ct. at 495 (citing *Helvering v. Mitchell,* 303 U.S. 391, 402 (1938); *United States v. Spector,* 343 U.S. 169, 178 (1952) (Jackson, J., dissenting); and *Wong Wing v. United States,* 163 U.S. 228, 235 (1896)). Since the authority to impose the sanctions of ALS under § 63-23-11(2) is conferred upon the Commissioner of Public

Safety, we find *Hudson* dispositive on this issue.

¶21. As to the second stage of the *Ward* test, we apply the factors listed in *Kennedy,* 372 U.S. at 168-69. These include: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment--retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face." *Hudson,* 118 S. Ct. at 493; (quoting *Kennedy,* 372 U.S. at 169). In addition, while this list of considerations is neither exhaustive nor dispositive, *Ward,* 448 U.S. at 249, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson,* 118 S. Ct. at 493; (quoting *Ward,* 448 U.S. at 249).

¶22. Although temporary suspension of a person's driver's license might appear to be an affirmative disability or restraint, it is more fairly characterized as the "revocation of a privilege voluntarily granted," a traditional attribute of a remedial action. *Helvering,* 303 U.S. at 399. *See also, e.g., State v. Drewry,* 687 A.2d 991, 993 (N. H. 1996); *State v. Gustafson,* 668 N.E.2d 435, 456-57 (Ohio 1996); *Jackson v. State,* 462 S.E.2d 802, 803 (Ga. Ct. App. 1995). As such, the sanction of ALS "is characteristically free of the punitive criminal element." *Helvering,* 303 U.S. at 399 and n.2. While ALS imposes a great inconvenience, it carries little of the stigma attached to traditional criminal punishments, and certainly does not approach "the 'infamous punishment' of imprisonment." *Hudson,* 118 S. Ct. at 496 (quoting *Flemming,* 363 U.S. at 617)). Thus, it cannot fairly be said that ALS has been historically viewed as a criminal punishment, but as a remedial measure. The overwhelming weight of state case law reinforces this view.[7]

¶23. Neither does the sanction come into play only upon a finding of scienter. Even though failing the breath test is one of the requirements for ALS under § 63-11-23(2), the statute on its face contains no requirement of scienter or "evil mind" in failing the test. In fact, one of the primary purposes of the statute is to speed the determination of the defendant's actual guilt in driving drunk, and the license can be suspended under § 63-11-23(2)--at least within the first ninety days--only where the driver does not request an adjudication of guilt. Thus, suspension under the statute is accomplished only *without* proof of the driver's scienter in committing the offense.

¶24. As to whether the sanction serves the traditional aims of punishment, the State readily concedes that ALS has punitive aspects, and may serve deterrent goals. Even in *Halper,* however, the Court discerned a danger of placing too much emphasis on these considerations, since "even remedial sanctions carry the sting of punishment." *Halper,* 490 U.S. at 447 n.7. In *United States v. Ursery,* 116 S. Ct. 2135 (1996), the Court clarified that sanctions need not be *solely* remedial. It noted that "[i]f [the rule that sanctions must be solely remedial] were applied literally, then virtually every sanction would be declared to be a punishment: it is hard to imagine a sanction that has no punitive aspect whatsoever." *Id.* at 2145 n.2 (citations omitted).

¶25. For our purposes, it is enough to note that while ALS has punitive aspects, especially from the driver's perspective, there are alternative purposes to which the sanction may rationally be connected.

Removing drunk drivers from the road is rationally connected to the state's interest in traffic safety, and we have never doubted "the necessity of effective action to reduce the carnage incident upon drunk driving." *Martin,* 495 So. 2d at 502. Additionally, the provisions which place responsibility on the driver to request trial promotes the state's interest in quickly determining guilt and removing the drivers within a reasonable period of time. ALS under § 63-11-23(2) does not appear inordinately harsh in light of these legitimate state goals. Under the plain language of the statute, a temporary permit is issued and the driver is permitted to remain on the road, in many instances, until his guilt is finally determined.

¶26. Finally, we note that even if failing the breath test were deemed to be the sole conduct for which a person's license is suspended, the fact that this conduct may also be criminal is insufficient to render ALS criminally punitive, particularly in the double jeopardy context. *See Hudson,* 118 S. Ct. at 496.

## V.

¶27. We note in passing that in the context of civil penalties, the language of the Mississippi Double Jeopardy Clause seems to provide decidedly less protection than its federal counterpart. While there are occasional suggestions in our case law that the State Double Jeopardy Clause contains a "multiple punishments" component as does the Federal Clause, *see e.g., Smith,* 429 So. 2d at 254, the express requirement of an "actual acquittal or conviction on the merits" belies such an interpretation.[8] While we need not reach the issue here, it is difficult to imagine that a civil sanction could ever bar a successive criminal prosecution pursuant to this state's Double Jeopardy Bar.[9] That is not to say that such sanctions are necessarily beyond constitutional infirmity, since they may be violative of rights embodied in the Due Process, Equal Protection and Excessive Fines provisions.

## VI.

¶28. For the foregoing reasons, we conclude that the Double Jeopardy Clauses of the United States and Mississippi Constitutions do not preclude criminal prosecution for violation of Miss. Code Ann. § 63-11-30 subsequent to administrative license suspension pursuant to § 63-11-23(2).

¶29. **AFFIRMED ON INTERLOCUTORY APPEAL AND REMANDED TO THE CIRCUIT COURT OF HARRISON COUNTY FOR FURTHER PROCEEDINGS.**

**PRATHER, C.J., PITTMAN, P.J., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., CONCURS WITH SEPARATE WRITTEN OPINION. McRAE, J., NOT PARTICIPATING.**


**SULLIVAN, PRESIDING JUSTICE, CONCURRING:**


¶30. Although I disagree with the majority's *Blockburger* analysis of the two statutes at issue here, I concur in the conclusion based upon the United States Supreme Court's intervening decision in *Hudson v. United States*, 118 S.Ct. 488 (1997). Of particular persuasion is Justice Scalia's dissent in *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 798 (1994), mentioned in footnotes 8 and 9 on pages 16 and 17 of the majority. I recognize the particular difficulty of barring

criminal punishment as a violation of double jeopardy when a civil penalty has already been imposed, and therefore concur with Justice Banks's well-reasoned opinion.

¶31. As an officer of the Court and a public official, it is my duty to follow the law, just as it is the duty of all inferior courts, public officers, and members of the bar. I do not have to like it to obey it, if we are a ". . .nation of laws, and not of men."

¶32. Our system provides open, honorable methods for members of the legal profession and law enforcement to combat laws and decisions that are offensive to them, but open defiance and silent subversion, however effective, violate the oaths taken by these individuals. The law governs presidents, judges, lawyers and law enforcement members. It is not just binding on "others."

¶33. If we are at liberty to only obey the laws we like, we may eventually find ourselves not at liberty at all.

1. Miss. Code Ann. § 63-11-30(2)(c) (1996) provides that for any third or subsequent DUI conviction under subsection (1), the offenses being committed within a period of five (5) years, such person shall be guilty of a felony and fined not less than Two Thousand Dollars ($2,000.00) nor more than Five Thousand Dollars ($5,000.00) and shall be imprisoned not less than one (1) year nor more than five (5) years in the State Penitentiary.

2. Keyes argued in his motion to dismiss that the form of his indictment violates the prohibition on ex post facto laws because the indictment was sufficient only in light of a subsequent amendment to the DUI statute. The trial court declined to address this claim since it determined that the indictment was sufficient even under the pre-amendment statutory scheme. Keyes' ex post facto argument is not currently before this Court.

3. We are at a loss to understand why Keyes, despite the lower court's order granting him permission to supplement the record for his interlocutory appeal, did not put a copy of his license suspension order in the record. However, both parties concede that this case involves suspension under § 63-11-23(2), and not test refusal under § 63-11-23(1). This is confirmed by the fact that a BAC was registered, suggesting that there was no refusal to take the test. We thus proceed on those grounds. We further note that it makes no difference for purposes of the present appeal whether Keyes actually requested a trial within thirty days after his arrest, since he does not here raise the issue that his suspension was unlawful.

4. The statute also provides that "[i]n no event shall a defendant be permitted to drive under the provisions of this subsection for more than ninety (90) days after the initial seizure of such defendant's license." We note that this provision is ambiguous in regard to what the Commissioner may do after ninety days have passed for a defendant who has abided by the requirements of the statute. A strict interpretation would provide that the Commissioner simply may not issue any more temporary permits, and that if a defendant is thereafter stopped on the road he will have no physical evidence of his legal status to drive. *See infra* note 5 and accompanying text. On the other hand, the statute could be construed to permit the State, in any event, to initiate suspension procedures ninety

days after seizure of a defendant's license. This would permit suspension even where the defendant has requested a trial and failure to hold one is beyond the defendant's control. We express no opinion here whether such a construction comports with due process, since the facts in the present case do not raise the issue. Our holding today merely clarifies that under § 63-11-23(2), the Commissioner may validly suspend a person's license during the first ninety days (or thereafter) for failure by the defendant to request a trial during the appropriate periods.

5. The law requires every licensee to "have the required license in his immediate possession at all times when operating a motor vehicle and shall display the same, upon demand of a justice court judge, a peace officer or license examiner or other authorized employee of the commissioner." Miss. Code Ann. § 63-1-41 (1996). A person may not be convicted under this law, however, as long as he produces in court a license "theretofore issued to him and valid at the time of his arrest." *Id.* Thus, until his license is affirmatively suspended, a person suffers no more than the potential inconvenience of being stopped without proof of his legal status as a licensed driver.

6. The act of failing the breath test and the act of driving drunk are not equatable for double jeopardy purposes. A failed breath test is only *evidence* of the fact that a driver was drunk, or that he was driving with a blood alcohol concentration of ten one-hundredths percent (.10%) or more. It does not constitute conclusive proof of either of those facts. Moreover, the fact that these two acts are based upon the same conduct is of no import. *See **Dixon,** 509 U.S. at 704*(rejecting "same-conduct" rule for double jeopardy purposes).

7. We note the abundance of cases from other jurisdictions provided by the State in support of the proposition that suspension of a person's driver's license, even under ***Halper,*** is remedial rather than punitive. *See e.g.,* **State v. Hickam,** 668 A.2d 1321 (Conn. 1995); **State v. Higa,** 897 P.2d 928 (Haw. 1995); **State v. Kocher,** 542 N.W. 2d 556 (Iowa 1996); **State v. Talavera,** 905 P.2d 633 (Idaho 1995); **People v. Lavariega,** 676 N.E. 2d 643 (Ill. 1997); **State v. Jones,** 666 A.2d 128 (Md. 1995); **State v. Mayo,** 915 S.W. 2d 758 (Mo. 1996).

8. For a well-reasoned argument that the Federal Double Jeopardy Clause does not contain a multiple punishments component, see ***Department of Revenue of Montana v. Kurth Ranch,** 511 U.S. 767, 798 (1994)* (Scalia, J., dissenting).

9. Justice Scalia's observation in ***Kurth Ranch*** is worthy of note. He pointed out that the Court had thus far confronted "the relatively easy task of disallowing a civil sanction because criminal punishment has already been imposed." He accurately predicted that the reverse situation would be more difficult. ***Kurth Ranch,** 511 U.S. at 804*.