# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00793-SCT

*ERIC TROY POWELL a/k/a TROY McCLINTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/22/1996 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENT E. SMITH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | JIM HOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/18/2001 |
| MOTION FOR REHEARING FILED: | 12/12/2001; denied 2/14/2002 |
| MANDATE ISSUED: | 2/21/2002 |

**BEFORE PITTMAN, C.J., MILLS AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. On August 22, 1996, Eric Troy Powell was convicted of aggravated assault on a police officer following a jury trial in the Marshall County Circuit Court. He was sentenced as a habitual offender to twenty years in the custody of the Mississippi Department of Corrections. He now appeals his conviction, raising the following issues:

**I. WHETHER THE APPELLANT WAS DENIED HIS RIGHT TO PROTECTION AGAINST DOUBLE JEOPARDY AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 22 OF THE MISSISSIPPI CONSTITUTION OF 1890.**

**II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO FIRST CROSS-EXAMINE POWELL AND THEN, FOLLOWING HIS EXCULPATORY STATEMENTS, PRESENT REBUTTAL TESTIMONY REGARDING HIS ROLE IN A PRIOR CRIME.**

**III. WHETHER APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND BY ARTICLE 3, SECTION 26 OF THE MISSISSIPPI CONSTITUTION OF 1890.**

**IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY AS REQUESTED IN WRITING BY THE APPELLANT WITH THE ONLY THREE INSTRUCTIONS DEALING WITH THE DEFENSE THEORY OF THE CASE.**

**V. WHETHER THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

¶2. Concluding that these issues are without merit, we affirm the judgment of the trial court.

## FACTS

¶3. On August 13, 1995, Officer Randy Harper of the Holly Springs Police Department saw a vehicle matching the description of one reported stolen earlier that day. Harper later testified that he followed the vehicle until he could positively identify it as the stolen vehicle. Harper notified his dispatcher that he had found the vehicle and then made the stop. Once stopped, Eric Troy Powell, the driver of the vehicle, jumped out of the vehicle and ran towards nearby woods. Harper pursued Powell into a gully and found him after a brief search.

¶4. At that point, the facts become disputed, but according to Harper's testimony at trial, he fell on top of Powell, Powell pointed a gun at him, and he and Powell struggled over the gun, which then went off. Harper was not hit by the gunshot, and other deputies soon arrived to help him take Powell into custody. Harper could not say for certain whether Powell already had the gun out or whether he pulled it out after Harper fell onto Powell. Harper also testified on cross-examination that, after the shot was fired, Powell said "You shot me."[1] Harper was the sole witness offered by the State during its case-in-chief.

¶5. Powell later took the stand in his own defense, basically agreeing with Harper's account, but adding that he ran so that he could dispose of the gun and some drugs that he was carrying on his person. He also claimed to have told Harper "I have a gun in this hand" because he feared getting shot, and that Harper responded to that statement by trying to grab the gun away from him, thereby causing it to fire accidentally. Powell claimed that he did not even realize that his gun had fired and that he initially thought that he himself had been shot.

¶6. On cross-examination, Powell claimed that he bought the gun from a friend who also let him borrow the vehicle. In rebuttal, the State then called Teddy Dwight Dallas, the actual owner of the gun and vehicle, who identified Powell as one of two men who robbed him at gunpoint, taking the vehicle and the gun that was kept in it, as well as other possessions of Dallas's. At the conclusion of Dallas's testimony, Powell's attorney moved for a mistrial, and the court denied the motion without giving any justification. After about fifty minutes of deliberation, the jury convicted Powell of aggravated assault on a police officer. The circuit judge sentenced Powell as a habitual offender to a term of twenty years.

## ANALYSIS

**I. WHETHER THE APPELLANT WAS DENIED HIS RIGHT TO PROTECTION AGAINST DOUBLE JEOPARDY AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 22 OF THE MISSISSIPPI CONSTITUTION OF 1890.**

¶7. Powell's first argument is that he was denied his right to protection from double jeopardy which was

triggered when he pled guilty to charges of resisting arrest stemming from the same incident that gave rise to this aggravated assault charge. The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This proscription is made applicable to Mississippi through the Due Process Clause of the Fourteenth Amendment. *Cook v. State*, 671 So.2d 1327, 1331 (Miss. 1996). Also, the Mississippi Constitution contains a Double Jeopardy Clause which provides that "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution." Miss. Const. art. 3, § 22.

¶8. Double jeopardy consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717; 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In other words, the Double Jeopardy Clause bars successive prosecutions for the same criminal offense. *Cook*, 671 So.2d at 1331. In determining whether the protection is applicable under either the Federal or State provision, we apply the "same-elements" test as articulated by the U.S. Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180,182, 76 L.Ed.306 (1932). *Keyes v. State*, 708 So.2d 540, 544 (Miss. 1998). The *Blockburger* test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' [sic] and double jeopardy bars additional punishment and successive prosecution." *Cook*, 671 So.2d at 1331 (quoting *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 2851, 125 L.Ed.2d 556 (1993)).

### A. Is Powell's Double Jeopardy Claim procedurally barred?

¶9. The State argues as a threshold matter that Powell's double jeopardy claim is procedurally barred because he failed to pursue it to a hearing and ruling. The record reflects that this issue was raised in a Motion to Dismiss Indictment on Grounds of Double Jeopardy, but there is nothing in the record which reveals the disposition of that motion. However, the issue of double jeopardy was raised again by Powell in his Motion for J.N.O.V., which was denied by the trial court.

¶10. The State also argues that Powell's claim is barred because the record contains no proof that Powell was actually convicted of resisting arrest. However, the State does concede the existence of abstracts of the records of the Municipal Court of Holly Springs showing Powell's conviction for resisting arrest, and the record does contain an affidavit of Powell's trial attorney averring that Powell did plead guilty to charges of resisting arrest which arose out of the same incident. There is sufficient evidence to consider this claim on the merits and to establish Powell's conviction for resisting arrest for *Blockburger* purposes.

### B. Is Powell's Double Jeopardy claim valid?

¶11. Powell's double jeopardy argument relies on the proposition that double jeopardy "bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Harrelson v. State*, 569 So.2d 295, 296 (Miss. 1990)(quoting *Grady v. Corbin*, 495 U.S. 508,521, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)). *Harrelson* adopted the "same conduct" test which had recently been established in *Grady v. Corbin*. *Harrelson*, 569 So.2d at 296. However, the "same conduct" test was expressly overruled by the U.S. Supreme Court in *Dixon*, 509 U.S. at 704, as noted by this Court in *Cook*, 671 So.2d at 1331. *Harrelson*, to the extent it conflicts with *Cook*, is hereby

overruled, and the proper test for establishing a double jeopardy claim is the ***Blockburger*** test.

¶12. Under ***Blockburger***, a conviction can withstand double jeopardy analysis only if each offense contains an element not contained in the other. ***Keyes***, 708 So.2d at 544. At the time of Powell's arrest, a person was guilty of resisting arrest under Miss. Code Ann. § 97-9-73 (2000)[2] if he:

> (1) obstructed or resisted
>
> (2) his lawful arrest or that of another person
>
> (3) by any state, local or federal law enforcement officer
>
> (4) by force, violence, threats or any other manner.

Miss. Code Ann. § 97-9-73 (2000)(as amended in 1994).

¶13. The elements of aggravated assault on a law enforcement officer under Miss. Code Ann. § 97-3-7(2)(b)[3] are:

> (1) attempts to cause
>
> (2) bodily injury to a law enforcement officer
>
> (3) with a deadly weapon or other means likely to produce death or serious bodily harm.

¶14. As these lists plainly show, each of the two offenses contains an element lacking in the other. To convict a defendant of resisting arrest, the State must show that either the defendant or someone else was actually being arrested at the time of the offense. To convict a defendant of aggravated assault on a law enforcement officer, the State must prove the use of a deadly weapon or some equivalent means of producing death or serious bodily injury. Since each of the two offenses contains an element lacking in the other, they survive ***Blockburger*** scrutiny. Powell's double jeopardy claim is without merit.

> **II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO FIRST CROSS-EXAMINE POWELL AND THEN, FOLLOWING HIS EXCULPATORY STATEMENTS, PRESENT REBUTTAL TESTIMONY REGARDING HIS ALLEGED ROLE IN A PRIOR CRIME.**

¶15. Powell next argues that the trial court erred in permitting the State to call Teddy Dwight Dallas as a rebuttal witness during the defense case-in-chief, so that Dallas could testify that Powell robbed him at gunpoint to get the gun and truck. Powell argues that Dallas's testimony was inadmissible under Rules 404(b) and 608 of the Mississippi Rules of Evidence. Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

M.R.E. 404(b). Rule 608(b) states in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his

credibility . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness. . . .

M.R.E. 608(b).

¶16. Dallas's testimony was clearly extrinsic evidence of a specific instance of Powell's conduct, but it also was evidence of a separate crime, thus providing Powell with a clear motive for the level of resistance he exhibited up to and including his arrest. We therefore conclude that Rule 404(b) is satisfied. The fact that the evidence might be inadmissible under Rule 608(b) is irrelevant. However, even when such rebuttal testimony can survive 404(b) scrutiny, it may still constitute reversible error. We have previously stated that when evidence is offered pursuant to Rule 404(b) and defense objections are overruled, "the objection shall be deemed an invocation of the right to MRE 403 balancing analysis [of whether the probative value of the evidence is substantially outweighed by its risk of unfair prejudice] and a limiting instruction." *Webster v. State*, 754 So.2d 1232, 1240 (Miss. 2000). *See also* **Smith v. State**, 656 So.2d 95, 100 (Miss. 1995) (making Rule 403 analysis and limiting instruction mandatory). The record before us is devoid of either a Rule 403 balancing analysis or any sort of limiting instruction with regard to the Dallas testimony.

¶17. However, under the specific facts of this case, the prejudice to Powell was diminished by two factors: (1) Officer Harper's previous testimony (to which Powell did not object) that the truck was stolen, and (2) by Powell's own testimony admitting he possessed an unregistered handgun. Because Powell sought to diminish the possible adverse consequences to himself which might arise out of his being apprehended, the facts relating to the robbery take on added probative value. Based on these factors, we conclude that the trial court did not abuse its discretion in allowing the Dallas testimony.

### III. WHETHER APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND BY ARTICLE 3, SECTION 26 OF THE MISSISSIPPI CONSTITUTION OF 1890.

¶18. We review claims of ineffective assistance of counsel under the familiar *Strickland* test:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Stringer v. State*, 454 So.2d 468, 476-77 (Miss. 1984)(quoting *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). This review is highly deferential to the attorney, and there is a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. *Hiter v. State*, 660 So.2d 961, 965 (Miss.1995). With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy" and cannot give rise to an

ineffective assistance of counsel claim. *Cole v. State*, 666 So.2d 767, 777 (Miss.1995).

¶19. Powell identifies several actions of his trial attorney which he argues rise to the level of ineffective assistance: (1) failure to call certain witnesses who could have testified as to Powell's truthfulness, (2) implication during closing arguments that Powell had been indicted for robbing Dallas at gunpoint (although he had not yet been indicted at that time) and concession that the car jacking gave Powell "a very good motive" for running from police, (3) failure to seek a ruling on Powell's double jeopardy claim prior to trial or to argue the point with sufficient law and authorities, (4) failure to submit or request an instruction on the lessor included offense of simple assault, (5) objections to Instruction S-1 but failure to provide the court with the basis for the objection, (6) failure to investigate the facts surrounding Dallas's testimony and thus unprepared to cross-examine him effectively, and (7) withdrawal from Powell's representation without written consent, thereby unnecessarily delaying his direct appeal.

### A. Failure to call witnesses.

¶20. The witnesses who purportedly could have been called were all character witnesses who could have testified only to Powell's propensity for truthfulness. The decision to exclude them must be viewed as falling under the ambit of trial strategy. This allegation lacks merit.

### B. Implying that Powell had been indicted for crimes alluded to in Dallas's rebuttal testimony.

¶21. The statement Powell refers to with regard to this issue is as follows:

I'll be perfectly honest with you that Eric Powell and I were really not happy that Teddy Dallas was allowed to testify. Now, understand that Eric has not even been to trial for the car highjacking of Teddy Dallas' pickup. He's being held for that Tennessee trial, and he's in a lot of serious trouble. I'm not trying to keep anything from you that you need to know to decide this case. It is just very important that you don't get distracted by what happened at another time and another place to make you have - more likely to believe that Eric Powell meant to shoot Randy Harper.

¶22. Clearly, the defense attorney did not say that Powell was actually indicted for car jacking, but merely implied that he might eventually be tried for it. Furthermore, the discussion of that fact was arguably calculated to minimize the impact of Dallas's testimony by distinguishing Powell's clear motive for resisting arrest from his less obvious motive for assaulting an officer. While there might have been a more artful way to pursue this strategy, it was a legitimate strategy and thus is not grounds for an ineffective assistance claim. This issue is also without merit.

### C. Failure to seek a ruling on Powell's double jeopardy claim.

¶23. As was previously discussed under Issue I, Powell never had a viable double jeopardy claim, and thus the attorney's decision not to pursue a ruling was justifiable. This issue is also without merit.

### D. Failure to submit or request an instruction on the lessor included offense of simple assault.

¶24. Powell cites no authority for the proposition that he was entitled to an instruction for simple assault, nor does he cite any authority for the proposition that failure to seek such an instruction constitutes ineffective assistance. His attorney might well have believed that Powell would have been acquitted of aggravated assault but convicted of simple assault and chosen not to pursue a lesser-included offense instruction for that

reason. We therefore conclude that failure to seek such an instruction is not proof of ineffective assistance. This issue is also without merit.

*E. Failure to provide the lower court with a basis for objecting to Instruction S-1.*

¶25. As the State points out, Powell offers no legal basis for concluding that Instruction S-1 was improper, [(4)] and we consider S-1 is an accurate statement of the law. We have long held that jury instructions are proper so long they fairly announce the law of the case and create no injustice when read as a whole. **Brown v. Mississippi Transp. Comm'n**, 749 So.2d 948, 961 (Miss. 1999). This issue is without merit.

*F. Failure to investigate facts surrounding Dallas's testimony and failure to properly cross-examine him.*

¶26. Powell offers no proof that his attorney was unaware of the facts surrounding the Dallas robbery, nor does he offer any suggestions on how Dallas might have been more successfully cross-examined. While the cross-examination of Dallas was very brief, consisting of a single question, it is plausible that an extended cross of Dallas would only have given the State further ammunition. The Dallas cross was thus covered under the ambit of trial strategy. Thus this issue is also without merit, and in any case, is moot, as the admission of Dallas's testimony was itself not reversible error.

*G. Withdrawal from Powell's representation without written consent, thereby unnecessarily delaying his direct appeal.*

¶27. We fail to see how any post-trial action of the defense attorney can establish a claim for ineffective assistance during the trial itself. In fact, Powell concedes that the withdrawal did not affect the trial itself, but nevertheless argues that this Court should apply a totality of the circumstances test and that the withdrawal is simply more proof of overall ineffectiveness which, when combined with the other failings, rises to the level of implicating the **Strickland** test. Powell cites no authority for the position that an improper post-trial withdrawal constitutes ineffective assistance mandating a new trial, and we find this issue is without merit.

¶28. In summation, none of Powell's allegations, nor the totality of all of them, is sufficient to overcome the "strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance." **Hiter**, 660 So.2d at 965.

**IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY AS REQUESTED IN WRITING BY THE APPELLANT WITH THE ONLY THREE INSTRUCTIONS DEALING WITH THE DEFENSE THEORY OF THE CASE.**

¶29. This Court has summarized this state's law on jury instructions as follows:

Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence.

**Jackson v. State**, 645 So.2d 921, 924 (Miss.1994)(internal citations omitted). This Court has also held that jury instructions do not warrant reversal where the jury was fully and fairly instructed by other instructions. **Williams v. State**, 667 So.2d 15, 24 (Miss.1996).

*A. Did the trial court err in rejecting Instruction D-1?*

¶30. Instruction S-1, which was granted by the trial court, reads in relevant part as follows:

The defendant, ERIC TROY POWELL a/k/a TROY McCLINTON, has been charged in the indictment with the offense of aggravated assault upon a law enforcement officer.

If you find from the evidence in this case beyond a reasonable doubt that:

1. Eric Troy Powell, on or about the 13th day of August, 1995, in Marshall County, Mississippi,

2. purposely and knowingly attempted to cause bodily injury to Randy Harper,

3. by trying to shoot the said Randy Harper with a pistol, and

4. Randy Harper was a law enforcement officer acting within the scope of his duties,

then you shall find the defendant guilty as charged under the Indictment.

. . .

If the State has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find the defendant not guilty.

Powell's proposed Instruction D-1 reads in relevant part as follows:

ERIC TROY POWELL a/k/a TROY McCLINTON has been charged with the offense of attempted aggravated assault upon a law enforcement officer under § 97-3-7 of the Mississippi Code of 1972, as amended

If you find from the evidence in this case beyond a reasonable doubt that:

1. Eric Troy Powell, on or about August 13, 1995, in Marshall County, Mississippi,

2. purposely and knowingly attempted to cause bodily injury to Randy Harper

3. by trying to shoot the said Randy Harper with a pistol, and

4. said pistol was a deadly weapon, and

5. Randy Harper was a law enforcement officer and

6. Randy Harper was acting within the scope of his authority as a law enforcement officer, and further,

7. the aiming and discharging of the pistol by Eric Troy Powell was not accidental.

then you shall find the defendant guilty as charged.

If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Eric Troy Powell not guilty.

¶31. Powell argues that by refusing to give Instruction D-1, the lower court erred by excluding the only instruction to contain the defense's theory of the case: that the firing of the gun was accidental. We disagree. Instruction S-1 clearly requires the State to prove beyond a reasonable doubt that Powell acted "purposely and knowingly." Since a jury could not believe that Powell purposely and knowingly tried to shoot Harper and simultaneously believe that he fired the gun accidentally, we conclude that Powell's defense theory is incorporated into Instruction S-1, albeit indirectly, and the trial court did not err in rejecting Instruction D-1 as cumulative.

### B. Did the trial court err in rejecting Instruction D-3?

¶32. Powell requested Instruction D-3, which reads as follows:

You have heard evidence that Randy Harper made a statement prior to trial that may be inconsistent with the witness's testimony at this trial. If you believe that an inconsistent statement was made, you may consider the inconsistency in evaluating the believability of the witness's testimony. You may not, however, consider the prior statement as evidence of the truth of the matters contained in the prior statement.

¶33. In response, the State cited *Foster v. State*, 508 So.2d 1111, 1118-19 (Miss. 1987), in which we affirmed the denial of a defense instruction containing similar language regarding prior inconsistent statements. In *Foster* this Court reasoned that the instruction represented an improper comment on testimony. *Id.* at 1119. The State's reliance on *Foster* is misplaced, however, because we have since retreated from this position in numerous cases holding denial of instructions such as this one to be reversible error. *See generally Ellis v. State*,790 So.2d 813 (Miss. 2001); *Ferrill v. State*, 643 So.2d 501 (Miss. 1994); *McGee v. State*, 608 So.2d 1129 (Miss. 1992). *Foster*, to the extent that it holds prior inconsistent statement instructions such as Instruction D3 to be impermissible comments on the evidence, is hereby overruled.

¶34. We nevertheless decline to reverse Powell's conviction on this issue. Under the facts before us, the prior statement supported Powell's version of events more than the trial testimony. The failure to give the instruction thus redounded to his benefit and was harmless error.

### C. Did the lower court err in rejecting Instruction D-4?

¶35. Powell's proposed Instruction D-4 reads as follows:

The mere pointing of a firearm at a law enforcement officer does not constitute attempt to commit aggravated assault on said law enforcement officer.

¶36. While Instruction D-4 is an accurate statement of the law,[(5)] it is inapplicable in the case sub judice because Powell did more than merely point a firearm-he actually fired. The issue for the jury was whether he fired accidentally or deliberately, not whether merely pointing the gun constituted aggravated assault. The lower court did not err in rejecting this instruction.

## V. WHETHER THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶37. We review this challenge to the weight of the evidence presented to support a conviction by applying

the following standard:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. ***Thornhill v. State***, 561 So. 2d 1025, 1030 (Miss. 1989), *rehearing denied*, 563 So. 2d 609 (Miss. 1990). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. ***Benson v. State***, 551 So.2d 188, 193 (Miss. 1989) (*citing* ***McFee v. State***, 511 So. 2d 130, 133-134 (Miss. 1987)). Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. ***Mitchell v. State***, 572 So.2d 865, 867 (Miss. 1990).

***Herring v. State***, 691 So.2d 948, 957 (Miss.1997).

¶38. There were two witnesses, the officer and Powell, who agree that Powell said "You shot me" after the gun went off. It does seem difficult to rationally reconcile that statement with the idea that Powell deliberately pulled the trigger and thus had the intent necessary to convict for attempted aggravated assault. However, under our stringent standard of review, reasonable and impartial jurors might have found the requisite intent if they gave less weight to Powell's statement about being shot and instead inferred intent from other surrounding circumstances. Therefore, we conclude that the jury verdict was not against the overwhelming weight of the evidence.

## CONCLUSION

¶39. For all the reasons set forth above, Powell's conviction and sentence are affirmed.

¶40. **CONVICTION OF AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER AS A HABITUAL OFFENDER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT PAROLE OR PROBATION, AFFIRMED.**

> **PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, WALLER, DIAZ AND EASLEY, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. Powell was not wounded. A shot was fired as he and Officer Harper struggled for the gun, but no one was hit by the bullet.

2. The relevant language of § 97-9-73 is as follows: "It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer, and any persons doing so shall be guilty of a misdemeanor . . . ." Miss. Code Ann. § 97-9-73 (2000).

3. The relevant language of § 97-3-7 (as amended in 1993) was as follows: "A person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .**"** The punishment was substantially increased if the victim was a member of any of several classes of individuals, including law enforcement agents.

4. Instruction S-1 is discussed more fully in Issue IV below.

5. *See generally* **Gibson v. State**, 660 So.2d 1269, 1270 (Miss. 1995).