606 So.2d 1098 (1992)
Phillip E. REINING
v.
STATE of Mississippi.
No. 89-KA-0906.
Supreme Court of Mississippi.
August 19, 1992.
*1099 William T. Bailey, Sr., Lucedale, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J. and ROBERTSON and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
This is an appeal from the Circuit Court of George County, Mississippi, wherein the Appellant was convicted of simple assault on a law enforcement officer, as well as resisting arrest. He was sentenced to serve one (1) year in the Mississippi Department of Corrections and six (6) months in the county jail. The six (6) month term was to run concurrently with the one (1) year sentence. This case is one of several involving charges of assaults on police officers by members of the Bethel Home in Lucedale.

FACTS
This case centers around incidents which took place on June 13, 1988, at the Bethel Baptist Church ("Bethel Home") in Lucedale, George County, Mississippi. Pursuant to allegations of abuse occurring at the Bethel Home, the State Welfare Department began to investigate the "Home." The Department's staff were met by hostile church members who refused to let the State inspect the premises or speak with anyone. In short, the State agency was told to "butt out", and that the operation of the Bethel Home was none of the State's business. The Welfare Department proceeded to go to chancery court, youth court division, to obtain a court order for the removal of all the children, under the age of eighteen (18) years, who were present at the home and whose parents did not live at the home with them.
George County Sheriff Eugene Howell, accompanied by two or three deputies, was in charge of executing this chancery court order. Realizing that additional manpower was needed, he contacted Troop Commander Richard Smith of the Mississippi Highway Patrol. Approximately eight (8) to ten (10) troopers were sent from the Hattiesburg area to help execute the order. Thomas Brittany, Director of the Mississippi Welfare Department, also accompanied the highway patrolmen to the site of the Bethel Home. It was estimated that, after a few hours, as many as thirty (30) to thirty-five (35) officers mostly comprised of state troopers were on the scene.
Apparently, when officers arrived at the Home to execute the warrant, they were met by Herman Fountain, pastor of Bethel Baptist Church. Upon Sheriff Howell's informing Reverend Fountain that they were there to gather up the children at the Home, pandemonium broke loose. The children were instructed to resist and were ordered to go into the church and hide. The adults were busy trying to stop the police from gathering up children. Reverend Fountain refused to cooperate with the *1100 police and he was subsequently arrested. While the police were trying to restrain Reverend Fountain, various scuffles began erupting. One of these involved the appellant in this case, Phillip Reining. According to the testimony of Sheriff Howell, Reining kept hindering the officers' attempts to arrest Reverend Fountain. Reining was then ordered arrested also. Reining began swinging his arms wildly in an attempt to prevent the police from subduing him. During this time, Reverend Fountain had been handcuffed and placed in a police car. However, an unidentified person proceeded to open the police car door, allowing Reverend Fountain to jump out and start screaming, all while still in hand cuffs. He was recaptured and again placed in the police car. During these scuffles, the officers were pelted with rocks, bricks, and abuse.
As stated, the appellant Reining began swinging his arms wildly to prevent his capture. It was at this point that the assaults on the police officers occurred. Sheriff Howell testified that Reining hit him in the chest, but does not remember, if his fist was open or closed. Trooper Charles Sauls, observed the sheriff and deputy having a problem subduing Reining, and went to their aid. Trooper Sauls testified that when Reining saw him approaching, he took a swing at him. However, Sauls reacted to the approaching fist by blocking the blow with his left wrist and hand. Had Sauls not blocked Reining's fist, he would have been hit in the face. The blow to Saul's wrist resulted in a sprained wrist and a jammed thumb. He did not seek medical attention, but kept his wrist wrapped for two weeks.
Reining testified that all the officers were in uniforms and that when he was being restrained, he knew that they were police officers. After Reining had been subdued, he was placed head down on the sheriff's car where he was handcuffed and arrested. An attempt to place handcuffs on Reining took some effort, because he would not let go of his own shirt.
Sheriff Howell testified that Reverend Fountain was the first one to be arrested because he was interfering with the police carrying out the judicial order. He also claimed that Reverend Fountain assaulted him too. Approximately two hours were consumed before the children could be removed from the premises. During the chaos, the children were told by the Fountain group to go into the church, lock the doors, and hide. Since the children would not open the door, the police had no alternative except to break it down. Commander Smith of the Highway Patrol testified that Dr. Brittany, head of State Welfare Department, locked himself in his patrol car when the chaos erupted.
When the defense called their witnesses, there were differing accounts of the incident. Sophia Baldino, a staff worker at the Home and wife of Mike Baldino, who was also arrested, testified that Reining was arrested first, then Reverend Fountain. According to Baldino, at the time Reining was arrested, he had a twelve (12) year old boy on his shoulders. The police pulled the child off Reining's shoulders and arrested him. Baldino claimed to have seen Reverend Fountain sitting on the ground in handcuffs.
Lonnie Bouleware, a former deputy, who was at the scene on the day in question, stated that subpoenas were served on all of the adults at the Home earlier that day. It was on the second trip, the same day, when the altercations occurred. This was the only mention of subpoenas having been issued. Next, Mike Baldino testified that he was also arrested that day and charged with assaulting a police officer; that Reining was arrested first, then he was arrested, and that both were put in a hot police car. He stated that he confronted Dr. Brittany and said that since the kids had been in the state's custody, they had been allowed to smoke, fornicate, and listen to rock music. Baldino testified that, when Reining was arrested, he did not have a child on his shoulders.
Reverend Fountain testified that Mike Baldino was the first one arrested, and that the three of them were put in separate police cars; that he exited the police car, not wanting to go to jail peacefully, and struggled with the police; and that he did not see anyone strike a police officer. Reverend Fountain admitted telling the children *1101 to go inside the church, but claimed he did not see any rock throwing.
Finally, Reining himself testified that on the day in question, he was told to get the children in the church, and that, at the time, he had two boys with him, one being on his shoulders; that the sheriff stopped him and said that he needed the boy on his shoulders; that the boy was pulled from his shoulders and was being pulled by both Reining and the sheriff; and that the troopers came to help the sheriff. Reining stated that the sheriff told him he was under arrest and to sit on the ground "over there"; that Reverend Fountain was sitting on the ground to his left, in handcuffs. Reining denied hitting anyone, although he did admit to struggling with the officers. Like Reverend Fountain, he did not admit to seeing any rock throwing.
Following jury deliberations, Reining was found guilty of assaulting Trooper Sauls, and guilty of resisting arrest, which involved his behavior with Sheriff Howell. From those convictions, the appellant Reining appeals on the following issues:
I. THE TRIAL COURT ERRED IN DENYING REINING'S MOTION TO TRANSCRIBE THE GRAND JURY PROCEEDINGS.
II. THE TRIAL COURT ERRED IN DENYING REINING'S MOTION FOR CHANGE OF VENUE.
III. THE STATUTE UNDER WHICH REINING WAS CONVICTED IS UNCONSTITUTIONALLY VAGUE.
IV. THE INDICTMENT'S LANGUAGE DOES NOT MIRROR THAT OF THE STATUTE FOR WHICH REINING IS BEING CHARGED.
V. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

DISCUSSION

I. THE TRIAL COURT ERRED IN DENYING REINING'S MOTION TO TRANSCRIBE THE GRAND JURY PROCEEDINGS.
Reining argues that he should have been supplied a copy of the transcript of the grand jury proceedings which resulted in his indictment. Reining cites Rule 4.06(a)(6) of the Unif.Crim.R.Cir.Ct.Prac. for the proposition that he is entitled to any exculpatory material concerning the defendant.
The general rule is that the accused has no right to inspection of the grand jury minutes for the purpose of trial preparation or discovery purposes. J.P. Ludington, Annotation, Accused's Right to Inspection of Minutes of State Grand Jury, 20 A.L.R.3d 7, § 3[a] (1968). However, if the defense can show a "particularized need" which outweighs the need for secrecy of grand jury proceedings, then the testimony might be released. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959).
The importance of maintaining secrecy of grand jury proceedings is spelled out in Rule 2.04 of the Unif.Crim.R.Cir.Ct.Prac. which states:
Grand jurors, except when called as a witness in court, shall keep secret the proceedings and actions taken in reference to matters brought before it, for six months after adjournment of the court at which they were grand jurors, and the name and testimony of any witness appearing before the grand jury shall be kept secret. No grand juror, witness, district attorney, clerk, sheriff or other officer of the court shall disclose to any unauthorized person that an indictment is being found or returned into court against a defendant or disclose any action or proceeding in relation to the indictment before the finding of an indictment or within six months thereafter or before defendant is arrested or gives bail or recognizance. District attorneys, county attorneys and any other officer of the court shall not announce to any unauthorized person what the grand jury will consider in its deliberations. If such information is disclosed, the disclosing person may be found in contempt of court punishable by fine or imprisonment.
See also Miss. Code Ann. § 13-5-61 (1991 Supp.).
*1102 In the case sub judice, Reining does not argue any "particularized need" that would override the policy for secrecy. It is unlikely that exculpatory evidence would be presented to the grand jury, since it only hears the prosecution's side of the story. Therefore, Reining's claim of error has no merit.[1]

II. THE TRIAL COURT ERRED IN DENYING REINING'S MOTION FOR CHANGE OF VENUE.
Reining claims that his motion for a change of venue was improperly denied, but he makes no argument to support that claim. Instead, he merely lists two cases without explaining their application or significance. This Court will not consider assignments of error when they are unsupported by argument and authorities. Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979). Further, the only mention in the record about a change of venue was a pretrial motion, which the lower court denied. Reining contends that testimony was given in the related case of Fountain v. State, 600 So.2d 212 (Miss. 1992), elaborating on the prejudices towards the defendants, thereby impeding their ability to receive a fair trial. Reining, however, did not include any of the Fountain transcript in the record in support of his argument. This Court will not consider any matter outside of the record. Harris v. State, 386 So.2d 393, 396 (Miss. 1980); Brown v. Elton Chalk, Inc., 358 So.2d 721, 722 (Miss. 1978).
The change of venue motions for all Bethel related cases were handled as a group, and eventually denied by the lower court judge subject to voir dire. After a thorough voir dire conducted by Judge Lockard as well as both attorneys, a jury was impaneled without any problem.
We note that this Court has repeatedly held the matter of whether venue should be changed in a criminal proceeding is committed to the sound discretion of the trial judge. Fisher v. State, 481 So.2d 203, 215 (Miss. 1985); Winters v. State, 473 So.2d 452, 457 (Miss. 1985); Cabello v. State, 471 So.2d 332, 339 (Miss. 1985); West v. State, 463 So.2d 1048, 1053-54 (Miss. 1985). We will not reverse for failure to grant a change of venue unless the trial judge abused his discretion. Fisher, 481 So.2d at 215. The rule was restated:
The sound exercise of the discretion vested in the trial judge when faced with a motion for change of venue must be informed by the evidence presented at the venue hearing coupled with the trial judge's reasoned application of his sense of the community and, particularly in a case such as this, an awareness of the uncontrovertible impact of saturation media publicity upon the attitudes of a community. No resort to expert psychological or behavioral science testimony is necessary to inform the judicial mind of that which common sense and experience have taught.
Fisher, 481 So.2d at 215. In the case sub judice, the trial judge did not abuse his discretion in denying a change of venue.

III. THE STATUTE UNDER WHICH REINING WAS CONVICTED IS UNCONSTITUTIONALLY VAGUE.
Reining argues that Miss. Code Ann. § 97-3-7(1) (1991) is unconstitutionally vague, since it does not define "bodily injury". The language of the statute states that:
A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another ... however, a person convicted of simple assault upon a law enforcement officer or fireman while such law enforcement officer or fireman is acting within the scope of his duty and office shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment for not more than five (5) years, or both.
Miss. Code Ann. § 97-3-7 (1991 Supp.) (emphasis added).
*1103 Although a statute imposing criminal penalties must be strictly construed in favor of the accused, it should not be so strict as to override common sense or statutory purpose. United States v. Brown, 333 U.S. 18, 25, 68 S.Ct. 376, 380, 92 L.Ed. 442, 448 (1948); see also State v. Burnham, 546 So.2d 690, 692 (Miss. 1989). Strict construction means reasonable construction. State v. Martin, 495 So.2d 501, 502 (Miss. 1986). This Court has held that the test concerning statutory construction is whether a person of ordinary intelligence would, by reading the statute, receive fair notice of that which is required or forbidden. Burnham, 546 So.2d at 692; Roberson v. State, 501 So.2d 398, 400 (Miss. 1987); Cassibry v. State, 404 So.2d 1360, 1368 (Miss. 1981).
Although there are no degrees of bodily injury stated in the statute, a minor injury is a "bodily injury" even though it may not be a traumatic injury.
The issue is rejected.

IV. THE INDICTMENT'S LANGUAGE DOES NOT MIRROR THAT OF THE STATUTE FOR WHICH REINING IS BEING CHARGED.
Reining contends that the indictment contains the word "feloniously" when it does not appear in the statute, § 97-3-7. However, § 99-7-3 states that formal or technical words are not necessary in the indictment. Miss. Code Ann. 99-7-3 (1972). An indictment need not use the precise words of the statute. Allman v. State, 571 So.2d 244 (Miss. 1990). If an indictment reasonably provides the accused with actual notice and it complies with Rule 2.05 of the Unif.Crim.R.Cir.Ct.Prac., it is sufficient to charge the defendant with the crime. Alexander v. State, 520 So.2d 127, 129 (Miss. 1988); Harden v. State, 465 So.2d 321, 324 (Miss. 1985).
A felony is punishable by confinement in the penitentiary. Beckham v. State, 556 So.2d 342, 344 (Miss. 1990); see also Gregg v. State, 374 So.2d 1301, 1305 (Miss. 1979). The maximum punishment for simple assault on a law enforcement officer is five (5) years imprisonment.
The issue is rejected.

V. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
The evidence in this case was in conflict but it presented a factual issue for the jury to resolve. The guilt issue was decided against the defendant and it was supported by substantial evidence. There is no merit in the defendant's contention that the verdict was against the overwhelming weight of the evidence and the issue is rejected.
The judgment of the lower court is affirmed.
COUNT I: CONVICTION OF ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF ONE YEAR IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
COUNT II. CONVICTION OF RESISTING OR OBSTRUCTING ARREST AND SENTENCE OF SIX (6) MONTHS IN THE COUNTY JAIL TO RUN CONCURRENT TO SENTENCE IN COUNT I AFFIRMED.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs with Parts I, III, IV, and V and dissents without written opinion to Part II.
NOTES
[1] There is no requirement that the proceedings before a grand jury, including witnesses' testimony be recorded and, therefore, a copy could not be furnished. We are unaware that any circuit courts in the state so record.