# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-02060-SCT

*FRANK SANDERS TIPTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/30/2007 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROSS PARKER SIMONS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | ANTHONY N. LAWRENCE, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND VACATED - 06/24/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### DICKINSON, JUSTICE, FOR THE COURT:

¶1. The defendant – an employee of a private company that (according to Mississippi Law)[1] provides an *alternative* to incarceration services – was indicted and convicted under a statute[2] that criminalized certain acts committed by an "employee of any contractor providing incarceration services." Since the terms "incarceration" and "alternative to incarceration" are mutually exclusive, we reverse and vacate the conviction.

---

[1]*See* Miss. Code Ann. § 47-5-1003(1) (Supp. 2009).

[2]Miss. Code Ann. § 97-11-33 (Rev. 2006).

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     Court Programs is a private company that contracts with the City of Gulfport to provide probation and monitoring services for persons convicted of misdemeanors in Gulfport City Court. While monitoring the probation activities of Dorothy Lakay Rayborn (who had been convicted of shoplifting), Tipton offered to pay her monthly fine if she would shower in front of him.

¶3.     Tipton was indicted and convicted for violation of Mississippi Code Section 97-11-37. He now appeals, raising numerous issues including that – because he did not fall within any of the categories of persons covered by the statute under which he was indicted – he was entitled to a directed verdict. We agree.

## ANALYSIS

¶4.     For a trial judge, "considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'"[3]

¶5.     Our standard of review of a trial judge's decision on a motion for directed verdict is as follows: "[A]fter viewing the evidence in the light most favorable to the prosecution, [could] any rational trier of fact . . . have found the essential elements of the crime beyond

---

[3] *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)).

2

a reasonable doubt."[4] If the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," this Court must reverse and render.[5]

¶6.     Tipton was charged under Mississippi Code Section 97-11-33, which provides:

> If any judge, justice court judge, sheriff, deputy sheriff, sheriff's employee, constable, assessor, collector, clerk, county medical examiner, county medical examiner investigator, employee of the Mississippi Department of Corrections, employee of any contractor providing incarceration services or any other officer, shall knowingly demand, take or collect, under color of his office, any money fee or reward whatever, not authorized by law, or shall demand and receive, knowingly, any fee for service not actually performed, such officer, so offending, shall be guilty of extortion, and, on conviction, shall be punished by fine not exceeding Five Thousand Dollars ($5,000.00), or imprisonment for not more than five (5) years, or both, and shall be removed from office.[6]

Thus, to convict Tipton of the crime for which he was indicted, the State carried the burden of proving beyond a reasonable doubt that Tipton belonged to one of the enumerated statutory categories. The State argues that Tipton was an "employee of [a] contractor providing incarceration services."[7]

¶7.     During its case-in-chief, the State twice called Charles Langenbacker, a manager at Court Services during Tipton's tenure with the company. Langenbacker's testimony was the only evidence as to the nature of the services provided by Court Programs. He testified that Court Programs, Inc., a private corporation, " had an agreement or contract with the City of

---

[4]*Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

[5]*Id.* (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

[6]Miss. Code Ann. § 97-11-33 (Rev. 2006).

[7]The State offered no jury instruction, and makes no argument on appeal, that Tipton was covered by any other category.

3

Gulfport to administer probation services for the courts." He confirmed that Tipton was assigned by the company to monitor Dorothy Lakay Rayborn. On cross-examination, Langenbacker said of his company:

Q. And, in fact, *y'all don't offer any incarceration services at all, do you*?

A. *No, sir*.

Q. In fact, you offer alternatives to incarceration, is that correct?

A. That is correct.

Q. *So, your company is not a contractor that offers incarceration services; true*?

A. *Yes, sir, that is true*.

(Emphasis added.)

¶8. Prior to resting, the State was permitted to recall Langenbacker. The prosecutor elicited from this witness that Court Programs, Inc., was a private entity, and that the company monitored some persons whom courts had placed on house arrest. Such monitoring was accomplished, according to Langenbacker, by means of ankle bracelets, telephone voice recognition, and GPS. On cross-examination, Langenbacker said of the company's employees:

Q. Because your employees, your private employees were not certified law enforcement officers, correct?

A. Yes, sir, that is correct.

Q. They were not certified Department of Correction [sic] officers, correct?

A. Yes, sir.

4

Q. And then *they weren't any type of officer,* they were only private employees. Isn't that true?

A. *That is true.*

Q. Last question. *It is true that your company did not provide incarceration services.* It provided alternatives to incarceration services. Is that correct?

A. *That is correct.*

(Emphasis added.)

¶9. After the close of the evidence, Tipton moved for a directed verdict. In denying the motion, the trial court stated that

> the services provided to the municipal court in Gulfport [by Court Programs] included house arrest, included what we refer to as intensive supervision. In felony cases, that is equivalent to, as I understand it by our Supreme Court, they have equated that to incarceration. So, those services are included. I think it's without question the testimony here establishes they don't provide prison facilities, but they do provide incarceration services. And I think the status of Mr. Tipton would be included, and his conduct proscribed by this particular statute.

Tipton argues that this construction violates the long-established rule that criminal statutes are to be construed liberally in favor of the accused and strictly against the State, and that house arrest and "incarceration services" cannot be synonymous because Mississippi Code Section 47-5-1003(1) defines "intensive supervision," commonly known as house arrest, as a "program [that] may be used as an *alternative* to incarceration."[8] We must agree with Tipton.

---

[8]Miss. Code Ann. § 47-5-1003(1) (Supp. 2009) (emphasis added).

¶10.    The interpretation of a statute "is a question of law subject to de novo review."[9]

Furthermore, "[i]t is well settled that when a court considers a statute passed by the

Legislature, the first question before the Court is whether the statute is ambiguous. If the

statute is not ambiguous, the court should interpret and apply the statute according to its plain

meaning without the aid of principles of statutory construction."[10]

¶11.    The term "incarceration services" is not defined by statute. In considering the

arguments advanced by the State, we must apply the "bedrock law in Mississippi that

criminal statutes are to be *strictly* construed against the State and *liberally* in favor of the

accused."[11]

¶12.    Extortion was a common-law offense that could be committed only by officials.[12] The

crime was first codified by our Legislature in the 1892 Code (Section 1453). Through the

years, the Legislature has amended the statute to expand the list of officials to which the

prohibited conduct would apply. Thus far, the Legislature has not seen fit to include a

category which applies to persons employed by a private company providing monitoring or

probation services.

---

[9]***Arceo v. Tolliver***, 19 So. 3d 67, 70 (Miss. 2009) (citing ***Sheppard v. Miss. State Highway Patrol***, 693 So. 2d 1326, 1328 (Miss. 1997)).

[10]***Finn v. State***, 978 So. 2d 1270, 1272 (Miss. 2008) (quoting ***Harrison County Sch. Dist. v. Long Beach Sch. Dist.***, 700 So. 2d 286, 288-89 (Miss. 1997).

[11]***Coleman v. State***, 947 So. 2d 878, 881 (Miss. 2006) (citing ***McLamb v. State***, 456 So. 2d 743, 745 (Miss. 1984) (emphasis added); *see also* ***Duke v. Univ. of Tex. at El Paso***, 663 F.2d 522, 526 (5th Cir. 1981) ("Ambiguities concerning the ambit of criminal statutes should be resolved in favor of lenity.") (citing cases).

[12]35 C.J.S. *Extortion* § 5 (2009); *See also* ***State v. Jones***, 71 Miss. 872, 15 So. 237 (1894).

¶13. In order to obtain a proper conviction under Section 97-11-33, the State was required to prove that Tipton was an "employee of any contractor providing incarceration services," which he was not. Thus, the State failed to prove an essential element of the crime, and we must hold that the trial court erred by failing to grant Tipton's motion for a directed verdict.

**CONCLUSION**

¶14. Because the State failed to prove an essential element of the crime of extortion, we reverse the trial court and vacate the judgment.

¶15. **REVERSED AND VACATED**.

**CARLSON AND GRAVES, P.JJ., LAMAR AND KITCHENS, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH AND PIERCE, JJ.**

**CHANDLER, JUSTICE, DISSENTING:**

¶16. I respectfully dissent. Charles Langenbacker, the manager of Court Programs's Gulfport office, testified that Court Programs is a private company that, in addition to monitoring probationers, also monitored offenders under house arrest. I would find that, under a reasonable interpretation of Mississippi Code Section 97-11-33, the term "incarceration services" embraces monitoring offenders on house arrest. *See* Miss. Code Ann. § 97-11-33 (Rev. 2006).

¶17. The plurality finds that, in denying Tipton's motion for a directed verdict, the trial court incorrectly construed Section 97-11-33 in favor of the State by finding that Court Programs was a contractor that provided incarceration services. At the hearing on Tipton's motion for a directed verdict, Tipton argued that "any contractor providing incarceration services" referred only to private prison facilities. The trial court ruled that there was

7

evidence that Court Programs provided incarceration services, because it provided supervision for offenders on house arrest, and the appellate courts have held that house arrest is the equivalent of incarceration. The plurality finds that the trial court's ruling contravened the rule that criminal statutes are to be construed in favor of the accused, and that "incarceration services" cannot be interpreted to include house arrest, because the house-arrest statute states that house arrest is "an alternative to incarceration."

¶18.    This Court affords de novo review to the interpretation of statutes. *Gilmer v. State*, 955 So. 2d 829, 833 (Miss. 2007). If a statute is unambiguous, the Court will apply its plain meaning and refrain from statutory construction. *Id.* The Court's "primary objective" is to discern the Legislature's "true intent or meaning." *Id.* (citing *Clark v. State ex. rel Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980)). Further, "[a]lthough criminal statutes must be strictly construed in favor of the accused, we will not adopt an interpretation that is absurd or unreasonable." *Lewis v. State*, 765 So. 2d 493, 499 (Miss. 2000). "Courts have a duty to give statutes a practical application consistent with their wording, unless such application is inconsistent with the obvious intent of the legislature." *Miss. Ethics Comm'n v. Grisham*, 957 So. 2d 997, 1001 (Miss. 2007). This Court further has stated that:

> Although a statute imposing criminal penalties must be strictly construed in favor of the accused, it should not be so strict as to override common sense or statutory purpose. *United States v. Brown*, 333 U.S. 18, 25, 68 S. Ct. 376, 380, 92 L. Ed. 442, 448 (1948); see also *State v. Burnham*, 546 So. 2d 690, 692 (Miss. 1989). Strict construction means reasonable construction. *State v. Martin*, 495 So. 2d 501, 502 (Miss. 1986).

*Reining v. State*, 606 So. 2d 1098, 1103 (Miss. 1992).

8

¶19. Langenbacker testified that Court Programs monitored offenders under house arrest with ankle bracelets and voice-recognition equipment. He testified that Court Programs did not offer incarceration services, but instead offered alternatives to incarceration. Although the plurality supports its opinion by quoting Langenbacker's testimony, I observe that statutory interpretation presents a question of law for the court that is not resolved by witness testimony. *Hedgepeth v. Johnson*, 975 So. 2d 235, 237 (Miss. 2008). I proceed to my analysis of the purely legal question presented.

¶20. I agree that Section 97-11-33 is ambiguous because the scope of "incarceration services" is unclear. Miss. Code Ann. § 97-11-33 (Rev. 2006). The majority finds that the ambiguity requires an automatic default to Tipton's interpretation. However, even when a statute that proscribes criminal conduct is ambiguous, this Court must afford the criminal statute a reasonable construction, rather than reflexively adopting whatever construction is offered by the defendant. I would find that, under a reasonable construction of the statute, the Legislature did not intend to restrict the application of the statute to private prisons, as argued by Tipton. Otherwise, the statute could have so provided. Instead, the statute specifies "any contractor providing incarceration services."

¶21. The Legislature has established an intensive supervision program, commonly known as "house arrest," as an alternative to incarceration in the general prison population for certain low-risk and nonviolent offenders. Miss. Code Ann. §§ 47-5-1001 to 47-5-1015 (Rev. 2004 and Supp. 2009). Mississippi Code Section 47-5-1001(e) provides the following definition of house arrest: "the confinement of a person convicted or charged with a crime to his place of residence under the terms and conditions established by the department or

9

court." Miss. Code Ann. § 47-5-1001(e) (Rev. 2004). An offender in an intensive supervision program is under the jurisdiction of the Mississippi Department of Corrections (MDOC), which must promulgate rules providing reasonable guidelines for the operation of an intensive supervision program. Miss. Code Ann. §§ 47-5-1003(3), 47-5-1005 (Supp. 2009). The Court of Appeals has found that house arrest is merely a reclassification of MDOC confinement because, instead of being housed in the general prison population, the offender is serving time confined to house arrest. *See Ivory v. State*, 999 So. 2d 420, 426 (Miss. Ct. App. 2008); *Brown v. Dep't of Corr.*, 906 So. 2d 833, 835 (Miss. Ct. App. 2004); *Perry v. State*, 798 So. 2d 643, 645 (Miss. Ct. App. 2001); *Lewis v. State*, 761 So. 2d 922, 923 (Miss. Ct. App. 2000).

¶22. It was established that Court Programs provided house arrest for misdemeanor offenders or felony defendants awaiting trial. However, because there was no evidence that the house arrest provided by Court Programs was administered by the MDOC, there was no showing that it was the "house arrest" prescribed by the statutes governing the intensive supervision program. Miss. Code Ann. §§ 47-5-1001 to 47-5-1015 (Rev. 2004). Nonetheless, because house arrest essentially confines an offender to his or her place of residence, house arrest is the equivalent of incarceration for the purposes of Section 97-11-33. I would find that: (1) "incarceration services" reasonably embraces monitoring offenders on house arrest, and (2) there is nothing in Section 97-11-33 to indicate that, with the language "any contractor providing incarceration services," the Legislature intended to restrict its application to private prisons, as posited by Tipton, rather than to any contractor

10

providing incarceration services.  Therefore, I would affirm the decision of the Circuit Court of Jackson County.

**WALLER, C.J., RANDOLPH AND PIERCE, JJ., JOIN THIS OPINION.**